WILLIAM WINN, JAMES ROSS ET AL.
          vs.                              } SEPT. TERM, 1847.
ALBERT & WIFE, SAMUEL JONES ET AL.

[SUPPLEMENTAL BILL—INJUNCTION—UNDUE PREFERENCE—VACATING DECREE.]

THE filing a supplemental bill is not a matter of course, but only by leave of the court, upon sufficient cause shown; and in a doubtful case the court may direct notice of the application to be given to the defendants who have appeared.

A new title, or new interest, may be set up by a supplemental bill, where the title relied upon in the original bill is sufficient to entitle the plaintiff to relief; but a confessedly bad title, thus relied upon, cannot be supported by a good title subsequently acquired, which is sought to be introduced by way of supplement.

The plaintiffs in an original bill claimed title as grantees in a deed of trust for the benefit of the creditors of an insolvent debtor, and were afterwards appointed permanent trustees of the same debtor, under the insolvent laws. HELD, that they had a right to introduce their new title as such trustees by a supplemental bill.

In cases of concurrent jurisdictions, that court which has first assumed control over the subject matter of controversy, ought to be entitled to retain it.

Upon a bill filed in this court, an injunction was granted, restraining the defendant, Jones, from giving, and the defendants, Albert and wife, from receiving, from said Jones, a preference over his other creditors. HELD, that proceedings *subsequently* instituted by Albert and wife, in Baltimore County Court, as a court of equity, and a decree thereby obtained, giving them such preference, were violations of said injunction, and that this court had a right to prohibit, by injunction, the execution of such decree, and to treat the same, with the proceedings by which it was obtained, as a nullity.

[On the 14th of September, 1846, Johns Hopkins and others, creditors of Samuel Jones, filed in this court their bill of complaint against Jones, Albert and wife, and one Michael S. Norman, in which it is alleged that Jones, being hopelessly insolvent, and knowing himself to be so, and being in fact under expectation of applying for the benefit of the insolvent laws, and designing and threatening to prefer certain of his creditors, his near relations, was about to convey a large portion of his property to his brother-in-law and sister, Albert and wife, with intent thereby to give to them an undue and improper preference over the rest of his creditors. The bill therefore prays for an

injunction to restrain Jones from conveying any of his property to the said Albert and wife, to secure or pay the debt due to them, in preference to the rest of his creditors ; and to restrain said Albert and wife from receiving any such preference. The injunction was accordingly granted.

Among the debts due by Jones was a large sum of money belonging to his sister, which he held as trustee for herself and her children, and which he had appropriated and misapplied to his own use. In November, 1845, upon their application, he agreed to convey to Albert and wife a certain property in the city of Baltimore, called the "Wheatfield Inn," with a view to secure the moneys so misapplied by him. But this agreement was never executed. On the 29th of September, 1846, pending the injunction granted upon the preceding bill, and after it had been served upon them, Albert and wife filed their bill in the equity side of Baltimore County Court, alleging the violation of the trust on the part of Jones, and his promise to protect the interest of his sister, by a conveyance of the Wheatfield Inn, and his failure to do so, and praying that he may be decreed to pay them the money due under the trust, and misapplied by him. On the 22d of October following, they filed a second bill in the same court, of the same import as the first, alleging, moreover, the intention of Jones to make conveyance of his property for the benefit of his creditors, and praying for an injunction to prevent him from conveying for this purpose the Wheatfield Inn, which was granted. On the 31st of October, a decree was passed on the first bill, directing Jones to bring into court the amount ascertained and admitted to be due the complainants, Albert and wife. On the 26th of the same month, Jones executed a conveyance of all his property except the Wheatfield Inn, to Ross and Winn, in trust:

1st. To defray the expenses attending the execution of the trust.

2d. To the payment of the several preferred creditors named in the schedule annexed to the deed.

3d. To the payment of the claims of such creditors as shall, on or before a given day, (the 1st day of January next,) exe-

cute and deliver to the trustees, full and absolute releases and acquittances of such claims.    And

4th.  To apply the surplus, if any remain, to all other creditors of Jones, without distinction.

On the 13th of January, 1847, Winn and Ross, as trustees under said deed, and the complainants in the original suit of Hopkins and others, filed their bill in this court, stating the object and import of the original suit, and the injunction thereon, and the subsequent proceedings of Albert and wife and Jones. The object of this bill is to set aside the decree obtained by Albert and wife, against Jones, as fraudulent and void, and to stay execution of that decree against any property of Jones. The injunction prayed for was granted.   On the 2d of February, 1847, Winn and Ross were appointed the permanent trustees of Jones, and qualified as such.   They thereupon applied, by petition, for leave to file a supplemental bill without prejudice to the injunction, setting out their new title thus acquired.   This application was resisted by the defendants, and upon argument by counsel upon both sides, the Chancellor, on the 30th of April, 1847, delivered the following opinion.]

THE CHANCELLOR:

In this case a bill was filed by the complainants on the 13th of January last, praying for an injunction to stay proceedings on a decree of Baltimore County Court, as a court of equity, obtained by William J. Albert and wife, against Samuel Jones, junior, on the 31st of October, 1846, and that the said decree might be annulled, as fraudulently rendered, and designed to give to the complainants an undue and improper preference over the other creditors of the said Jones.

The Chancellor, though not insensible of the extreme caution and delicacy with which the different equitable tribunals of the state should interfere with the acts and proceedings of each other, did not, nevertheless, feel himself at liberty to disregard the application in that case, it being stated, and appearing by the records of this court, that before the filing of the bill by said Albert and wife, against Jones, in Baltimore County Court,

the complainants, (with one exception,) in the bill of the 13th of January last, had filed their bill in this court, praying, upon the grounds therein stated, for an injunction to restrain the said Jones from giving, and the said Albert and wife from receiving, any assignment or transfer of his property in preference to the other creditors of said Jones. Upon this bill, which was filed on the 14th of September last, and which preceded the filing of the bill by Albert and wife, in the Baltimore County Court, the late chancellor granted an injunction, which is still in force.

According to the allegations of this bill, Jones was in a condition of hopeless insolvency, and could look alone to the relief afforded by the insolvent laws of the state, to be discharged from liability for his debts, a step which it averred he intended to adopt.

It likewise stated, that entertaining this expectation, he designed and threatened to give preference to certain of his creditors over the rest, and especially, that with a view and under an expectation of being and becoming an insolvent debtor, he proposed to give an undue and improper preference to the defendants, Albert and wife, and Norman, and in addition to the injunction which was asked for to prevent any such preference, the bill prayed that a receiver might be appointed to take possession of the property and effects of the said Jones, for the purpose of preserving them until a trustee should be appointed for the benefit of his creditors under the insolvent system, and for further relief.

It seemed to the Chancellor that the estate and affairs of Jones, thus alleged to be insolvent, and the questions between the conflicting claims of his creditors, and especially of those of them who were parties to this first bill, were by it subject to the jurisdiction of this court, and that, consequently, the injunction prayed for by the bill filed on the 13th of January last, might be granted, and it was accordingly ordered.

This last bill, as has been already stated, prays that the decree obtained by Albert and wife, against Jones, in Baltimore County Court, as a court of equity, may be annulled as fraudulently obtained. It alleges that Jones, on the 26th of October,

1846, conveyed to the complainants, Winn and Ross, all his property, of every description, except a piece of property in the city of Baltimore, called the Wheatfield Inn, which he covenanted also to convey, so soon as certain impediments then existing should be removed, in trust for the benefit of his creditors, as therein mentioned; and then, after many other statements, it avers that the decree of Baltimore County Court, which it seeks to annul, was fraudulently obtained, and designed and contrived to give to the parties obtaining it an undue and improper preference over the rest of the creditors of Jones.

This bill then prays that the Wheatfield Inn, as well as the rest of the property of the said Jones, conveyed in trust as aforesaid, may be declared charged in the hands of the trustees, with the payment of the debts of Jones, as expressed in the deed, and that the trustees may be permitted to account for the trust property under the direction of this court, which the bill asks shall assume jurisdiction over the whole subject, with a view to the distribution of the estate amongst the creditors, upon just and equitable principles.

When this bill was filed, Jones had applied for the benefit of the insolvent laws, and a provisional trustee had been appointed. The answers of Albert and wife and Jones having been filed, a motion was made to dissolve the injunction, which motion, according to the rules of the court, was to have been heard at the present term.   In this stage of the case, a petition was filed by the complainants, for leave to file a supplemental bill without prejudice to the injunction already granted.

It appears by the petition, that since the filing of the original bill, to wit:  on the 2d of February, 1847, the complainants, Winn and Ross, have been appointed, and have qualified, as permanent trustees of the defendant Jones, and they ask to be permitted, by supplemental bill, to set out their title as such trustees, insisting that the decree recovered by Albert and wife against the said Jones in Baltimore County Court, as a court of equity, is within the intent and meaning of the insolvent laws, and therefore fraudulent as against the title of the complainants as such permanent trustees; and that conse-

quently, if the conveyance by Jones, to Winn and Ross, in trust, as set out in the original bill, is for any reason inoperative, that then the property thereby intended to be passed, vests in them as permanent trustees, in which capacity they are entitled to a continuance of the injunction.

The filing of a supplemental bill is not a matter of course, but only by leave of the court upon sufficient cause shown. *Eager* vs. *Price*, 2 *Paige*, 333. And the same case proves that in a doubtful case the court may direct notice of the application to be given to the defendants who have appeared.

In this case, the defendants by their counsel were present at the time the petition for leave to file the supplemental bill was presented to the Chancellor, and stated their objections to it, and the counsel for the complainants was heard in support of the application.

The principal objection urged, is, that the title proposed to be set up by the supplemental bill, differs from, and is in fact antagonistical to, the title relied upon in the original bill, it being contended, that the plaintiffs cannot have the benefit of the former proceedings by a supplemental bill, but in respect of the same title as stated in the original bill.

It has been decided that if the original bill is wholly defective and there is no ground for proceeding upon it, it cannot be sustained by filing a supplemental bill, founded upon events which have subsequently taken place, or a title subsequently acquired. In such a case a new bill should be filed. But if the original bill was sufficient to entitle the plaintiff to one kind of relief, and facts subsequently occur, which entitle him to other or more extensive relief, he may have such relief by setting out such new matter in the form of a supplemental bill. *Candler* vs. *Pettit*, 1 *Paige*, 168.

In 3 *Daniel's Ch. Pr.*, 1657, it is stated that the plaintiff cannot support *a bad title*, by acquiring another after the filing the original bill, and bringing it forward by supplemental bill. And the case put, is that of a plaintiff who filed his bill to redeem a mortgage as heir at law of the mortgagor, and upon an issue directed, was found not to be heir ; but in the meantime

had purchased the right of a third person who claimed to be heir, and that fact was proposed to be stated by a supplemental bill: a demurrer to such supplemental bill was allowed. In the case put, it was clear the original bill was wholly defective, and there was no ground for proceeding upon it, the plaintiff having been ascertained by the verdict not to occupy the position which entitled him to redeem.

In *Story's Equity*, *section* 335, in illustrating the office and purpose of supplemental bills, the author says, if new charges are required to be made in order to obtain a further discovery, or a material fact is required to be put in issue, or a *new title*, the object cannot be obtained but by a supplemental bill. And in *Saunders* vs. *Frost*. 5 *Pick*. 276, it is said when any event happens subsequently to filing an original bill which gives a *new interest or right* to a party, it should be set out in a supplemental bill. It would seem, therefore, that the true rule is, not that you may not by a supplemental bill, set up a new title, or new interest acquired since the filing the original bill but that a confessedly *bad title*, relied upon in an original bill, shall not be supported by a good title subsequently acquired, and which is introduced by way of supplement.

The Chancellor thinks that if these complainants, Winn and Ross, had been the permanent trustees of Jones, at the time their original bill was filed, they might have presented their title as such trustees in the same bill with their title under the conveyance by Jones to them of the 26th of October last, which constituted their only title at the time, without subjecting their bill to the objection of multifariousness. And if he is right in this opinion, it would seem to follow that there can be no irregularity in bringing forward the subsequently acquired title in a supplemental bill. That such blending of distinct titles in the same bill, when the matters are homogeneous in their character, is allowable, is stated in 1 *Daniel, Ch. Pr.*, 395.

The Chancellor is not at this time, able to see any such inconsistency or conflict between the title proposed to be introduced by the supplemental bill, with that set up in the original, as to induce him to refuse his assent to the prayer of the petition.

The great object of these proceedings, from first to last, is to procure an equal distribution of the estate of Samuel Jones, junior, an insolvent debtor, among his creditors, and to prevent the giving of what is charged as an undue and improper preference to the defendants, Albert and wife. This is manifestly the object of the entire proceeding, but whether it can or ought, under the circumstances of this case, to be accomplished, remains to be decided hereafter.

It may happen, that the deed of trust, upon the strength of which the original bill was filed, may ultimately be adjudged valid, and as conveying to the grantees, all the property of Jones, except the Wheatfield Inn, and that his interest in that, therefore, whatever it may be, passed to the same parties as his permanent trustees under the insolvent proceedings; in which event, and to the extent of that property, there could be no possible conflict between the titles.

It has been argued, that if the decree of the Baltimore County Court, as a court of equity, is pronounced to be void, as giving an undue and improper preference to the parties in whose favor it was rendered, that then the deed of trust to Winn and Ross, is invalid for the same reason. This may or may not be so, but the Chancellor does not think it follows as a matter of necessary consequence, and at any rate, it would be premature now, upon this preliminary question, to express any opinion of it. Upon the best consideration which I have been able to give the subject, I think the leave to file the bill may be granted, but it will be granted upon such terms as not to deprive the defendants of an early decision upon their motion to dissolve the injunction.

———

[An order was accordingly passed, granting the leave asked for, with liberty reserved to the defendants, after answering the supplemental bill, to move for a dissolution of the injunction upon five days notice to the complainants.

Upon the hearing of the motion to dissolve, the Chancellor pronounced the following opinion:]

THE CHANCELLOR:

This case is now brought before the court upon the motion to dissolve the injunction granted on the 13th Jan'y last; and is submitted upon the written argument of the solicitors of the parties.

Two of the plaintiffs, Winn and Ross, are before the court in the double capacity of grantees under the deed of the 26th October, 1846, and as permanent trustees of Samuel Jones, junior, who petitioned for the benefit of the insolvent laws on the 11th of January in the year 1847, and whose appointment and qualification as such trustees is dated on the 2d of February, 1847. Upon their petition to file a supplemental bill, presenting their claim to relief in the capacity of insolvent trustees, the court was called upon to examine the question of the compatibility of the title thus presented, with that in which they had previously appeared; and upon a careful consideration of the subject, it was thought that no such conflict or inconsistency existed between the two titles, as to preclude the blending of them in the same proceeding; and hence, on the 30th of April last, an order passed, granting permission to file a supplemental bill, which was filed accordingly.

The object of these bills, original and supplemental, is to restrain proceedings upon, and to vacate as fraudulent and void, a decree obtained on the equity side of Baltimore County Court, by William J. Albert and wife, against Samuel Jones, junior, on the 31st of October, 1846; that decree being charged as a contrivance to give those parties an undue and improper preference over the other creditors of Jones, and made with a view and under an expectation of being or becoming an insolvent debtor.

The history of this case may be stated briefly, in order to explain the grounds upon which the order about to be passed is founded.

On the 14th of September, 1846, these complainants, with one exception, filed their bill in this court, against Samuel Jones, junior, Albert and wife, and Michael Norman, praying, upon the grounds stated in the bill, for an injunction to restrain the said Jones from giving, and the other parties from receiving,

any assignment or transfer of his property, in preference to the other creditors of Jones—upon this bill an injunction was granted by the late Chancellor, which yet remains in full force. Afterwards, to wit, on the 29th of September, of the same year, and after this injunction of this court had been served upon them, Albert and wife filed their bill against Jones, on the equity side of Baltimore County Court, alleging the indebtedness of Jones to the wife of Albert, and an agreement to secure her by a conveyance or mortgage of a piece of property in the city of Baltimore, called the Wheatfield Inn, and praying for the payment of the money, and for general relief. And, subsequently, on the 22d of the then following month, the same parties filed, in the same court, their second bill against Jones, with similar allegations of indebtedness to the female complainant, and of the promise of a conveyance, or mortgage of the same parcel of property, for the security of the debt; and alleging the intention of Jones to make a conveyance of his property for the benefit of his creditors generally, prayed for and obtained an injunction to prevent any such conveyance of the parcel called the Wheatfield Inn or any other property for the aforesaid purpose, and likewise for a specific performance of the contract. The injunction, however, was subsequently modified, so as to be confined to the Wheatfield Inn.

The injunction being thus modified, Jones, afterwards, on the 26th of the same month of October, conveyed to the complainants, Winn and Ross, all his property, except the Wheatfield Inn, with a covenant to convey that, when the injunction should be dissolved, or it could be legally conveyed, upon the trusts in the said deed expressed. On the 30th of October, 1846, Jones answered the first bill filed by Albert and wife, admitting the truth of the facts therein stated, and consenting to such a decree as the court might deem it right to pass. And on the day following, that is on the 31st of October, 1846, the court decreed, that Jones should forthwith bring into court, to be paid to the complainants, the sum of $24,319 34, with interest on a part thereof and costs. After some further proceedings, the complainants in that case, Albert and wife, on the

19th of December, 1846, applied to the court for a writ of *fieri facias* upon the decree, which issued accordingly, on the 21st of the same month, and was laid on the Wheatfield Inn.

The object of the bill now under consideration, is to vacate this decree upon the grounds already stated. Answers have been filed to these bills, in which, though the proceedings set forth in them are admitted to have occurred as stated, the fraudulent combination charged is denied, and the decree of Baltimore County Court, as a court of equity, upon the bill filed by Albert and wife against Jones, is maintained to be valid and effectual, as the decree of a court of competent jurisdiction, fairly and *bona fide* rendered, which can only be corrected and annulled, if there was error committed by the court rendering it, upon appeal to a superior tribunal.

When the injunction in this case was applied for, the Chancellor felt the full force of the objection now urged, and under his then and present impressions, would unquestionably have refrained from interfering in any way with the decree of a court of concurrent jurisdiction, but for the circumstance, that prior to the filing of the bill upon which the decree was obtained, this court had, by its injunction, forbidden the parties in whose favor it was rendered, from receiving, and Jones, the defendant, from giving them, any preference over their other creditors. The bill on which the injunction referred to was granted by the late Chancellor, was filed on the 14th of September, 1846, and after alleging the heavy indebtedness of Jones to the complainants, Hopkins and others, and stating the great amount of his debts to other parties, and utter and hopeless insolvency, so that no alternative remained to him but to petition for the benefit of the insolvent laws, proceeded to charge, that with that view and expectation, and designing to give a preference to certain of his creditors over the rest, was about to convey, assign or transfer a large portion of his property and effects to the said Albert and wife, creditors to a large amount, and to one Michael S. Norman, and to others of his creditors, then unknown to the complainants; all these parties, thus about to be preferred, well knowing the insolvent and embarrassed con-

dition of Jones; that though the said Jones was thus irretrieva-
bly insolvent, and had stopped payment, he yet evaded or de-
ferred applying for the benefit of the insolvent laws, for the
purpose, not only, the longer of holding and enjoying the posses-
sion of his property, but of consummating his plan of securing
his favored creditors.

The bill then prayed that the said Jones be enjoined from
conveying, assigning or transferring any of his property or
effects, rights or credits, to the said Albert and wife, or either
of them, to the said Norman, or any other of his creditors, or to
any one else in trust for them, to secure or pay the debts due
from the said Jones to them respectively, in preference to the
rest of his creditors.   And that the said Albert and wife, and
Norman, may be restrained from receiving such preference—
that a receiver might be appointed to take charge of the said
property and effects, in order that when a trustee should there-
after be appointed according to the provisions of the insolvent
laws, the same might be delivered to such trustee.   And the
bill prayed further for general relief.

Upon this bill, which was filed in anticipation of the applica-
tion by Jones for the benefit of the insolvent laws, an injunction,
to the extent prayed, was granted by the late Chancellor, which
still remains in full force; no answer to it, by any of the parties,
having been filed when the present bill was laid before the court
for an injunction; nor have the answers of some of the parties
been filed at this time.

It seems to me, that by this bill of September, 1846, this
court had jurisdiction over the subject of the insolvent estate of
Jones; and that so long as that bill was depending, or, at any
rate, so long as the injunction granted upon it remained in
force, the parties against whom that injunction was directed
had no right in any way to secure to themselves a preference
over the other creditors of the insolvent.   The jurisdiction had
attached before the application was made to the Baltimore
County Court, and the parties, Albert and wife, knew it, for
the process of this court had been served upon them.   Now
suppose, while the injunction upon the bill of the 14th of Sep .

6*

tember, 1846, remained in force, the defendants thereto, Albert and wife, instead of filing their bill in the equity side of Baltimore County Court, had filed it here, claiming a preference over the other creditors of Jones, can it be contended, that this court, in the face of that injunction, and in manifest violation of its spirit, if not of its terms, would have decreed them such preference? It seems to me impossible successfully to maintain such a proposition, and I am at a loss to perceive how their situation can be improved by their resort to a co-ordinate tribunal. Great caution should certainly be observed, lest the powers of these co-ordinate courts should be brought into conflict, as it is apparent the evils of such collision would be of serious magnitude; and I am persuaded, the safer, if not the only course, is, that each court shall never suffer itself to interfere in a cause, or in regard to a subject matter, over which another has exercised its jurisdiction. And such I understand to be the doctrine of the late Chancellor, which was sanctioned by the Court of Appeals, in the case of *Brown* vs. *Wallace*, 4 *Gill & Johns.*, 479. The Court of Appeals, in that case, say, "'Tis true both courts, in ordinary cases, have authority to grant injunctions; but where a suit has been commenced in one, it ought to be entitled to retain it." Now, did not this suit, in other words, did not the controversy in regard to the settlement of the estate of Samuel Jones, junior, and the right of Albert and wife to a preference over other of his creditors, commence in this court on the 14th of September, 1846, when the bill was filed here on that day? Did not that bill allege the utter insolvency of Jones, and his purpose to give an undue and improper preference to Albert and wife, and others, in contemplation of applying for the benefit of the insolvent laws? Did it not pray for an injunction prohibiting any such preference, and that the property of the insolvent might be preserved until an insolvent trustee should be appointed to take charge of it, to be administered under our insolvent system? These were the averments, and the relief prayed by that bill; and unquestionably, as it seems to me, gave to this court primary jurisdiction over this insolvent estate; and it is difficult to believe, that

if, in the bill subsequently filed by Albert and wife, in Baltimore County Court, praying for a preference over the other creditors of Jones, the existence and the object of the proceedings in this court had been disclosed, that the plaintiffs in the former tribunal could have succeeded.   On the contrary, I am firmly persuaded that the judges of the Baltimore County Court would have thought, and have declared, that as the litigation in regard to the distribution of the estate of Jones had originated in this court, it would be proper to remit the entire controversy to the same authority; or, at all events, they would have declined acting until the result of the proceeding there should be known, lest, by the separate and distinct action of the two courts, inconsistent if not discordant decisions upon the same subject might be made.

In this view of the case, then, I am of opinion, that the injunction upon the bill filed here in January last, properly issued in the first instance.   And the next question is, do the answers so far change the case as to require its dissolution at this time. These answers, it is true, deny in explicit terms the conspiracy and combination charged against Albert and wife, and Jones, and thus the imputation of fraud in fact, is removed; but they concede the legal proceedings which, in my opinion, prohibited these parties, Albert and wife, from obtaining from Jones a preference over his other creditors; and thus, without any reference to the allegation of fraud in fact, rendered any attempt by them to procure such a preference unjustifiable in point of law.   And, therefore, disclaiming the slightest intention to attribute to them the perpetration of fraud in fact, in obtaining their decree, I think the other considerations belonging to the case are quite sufficient to show that they should not be allowed to have the benefit of it.

But it is said, the complainants in this cause have no standing in court: first, because the deed of the 26th of October, 1846, to Winn and Ross, is a violation of the injunction granted upon the bill of the 14th of the then preceding month; and secondly, because that deed is void by reason of its terms and provisions.

It is to be remarked, however, that the injunction which was

granted here upon the bill referred to, is not directed against the grantees in the deed, but issued upon their application, or rather upon the application of one of them, in conjunction with other parties, and was especially intended to restrain the defendants, Albert and wife, and Norman, from obtaining a preference over the other creditors of Jones. And it is also to be remembered, that the deed is to put the creditors of Jones, with some inconsiderable exceptions, upon a footing of equality, the exceptions being confined to a class of creditors who, according to a principle of equity, or understanding, which extensively pervades the mercantile community of Baltimore, are entitled to a preference.

It would not, perhaps, be easy to show that a deed with such provisions is a violation of an injunction to prevent particular creditors of an insolvent from obtaining a preference over the rest. It might, I think, be fairly insisted that the deed and the injunction are perfectly harmonious. But it is said that the terms and provisions of the deed itself render it void. Now, in reply to this objection, it is certainly sufficient to say, that in the case of *James McCall and others* vs. *Hinkley and others,* recently decided by the Court of Appeals, a deed containing provisions quite as objectionable as the one under consideration, was adjudged to be valid. It is true, this decision was the result of a difference of opinion among the judges, the court being equally divided; but when to the members of the Court of Appeals Bench, who thought the deed effectual, there is added the weight of the opinion of the County Court from which the appeal was taken, there is certainly a preponderance of authority in favor of the deed. At all events, it would certainly be strange, if under these circumstances, at this time, and in the present stage of this cause, I should undertake to pronounce definitely against the present deed.

But assuming, for the sake of the argument, that the deed in question is inoperative and void, what is there to prevent the complainants, Winn and Ross, from falling back upon and maintaining themselves in their character of permanent trustees of Jones?

If the decree obtained by Albert and wife may be avoided as an undue and improper preference, under the act of 1834, ch. 293, and the deed to Winn and Ross is invalid for any reason whatever, why then there can be no doubt, I presume, that the property of Jones, the insolvent, has vested in his insolvent trustees, and that, in that character, they may apply to this court for relief against that decree.

It is said, however, that inasmuch as under the decree of Baltimore County Court, nothing more than the right of Jones in the property could have been sold, leaving untouched the title of the complainants thereto, that for that reason the interposition of this court by injunction was unnecessary. In the case of the *Union Bank* vs. *Poultney & Ellicott*, 8 *Gill & Johns.*, 325, the Court of Appeals decided, that a party holding a prior lien on lands, could not, by injunction, restrain a subsequent judgment creditor from enforcing his judgment by execution, because a sale under such execution could neither defeat or impair the rights of the party holding the prior lien, which would remain unaffected thereby. But this injunction is not asked for by a party holding a prior lien ; but by parties who insist that anterior to the decree, they had, in view of the impending and irretrievable insolvency of their debtor, Jones, obtained an injunction from a court of competent jurisdiction, forbidding him from giving, and these defendants from receiving, from him, a preference over his other creditors, so far as the property called the Wheatfield Inn is concerned, (which is the very property about to be sold under the decree, and would have been sold, it is presumed, but for the injunction.) The complainants in this case cannot claim upon the ground of prior lien ; because the deed to them, of the 26th October, 1846, expressly excepts it from its operation, though there is a covenant to convey it when the impediments then existing should be removed, but which, if the decree of Baltimore County Court had been carried into execution by a sale of the property, never would have been removed.

This case, therefore, does not at all resemble the case of the *Bank* and *Poultney & Ellicott*, and must be subject to different

considerations. Without going into any further observations, I have come to the conclusion that the injunction should be continued; and shall pass an order accordingly; and feel the less reluctance in doing so, as a speedy and effectual remedy exists for correcting my error, if I have committed one.

[Upon an appeal taken from this order, it was affirmed by the Court of Appeals; and the views of the Chancellor sustained in a learned and able opinion of the court, delivered by his Honor, Judge Frick. The deed of trust to Winn and Ross, which the Chancellor intimates, upon the authority of the case of *McCall* vs. *Hinckley*, 4 *Gill*, 128, might be sustained, was decided by the court to be fraudulent and void; and thus the question of the validity of such conveyances in this state has been finally determined.]

ALEXANDER and DULANEY for Complainants.
NELSON and DONALDSON for Defendants.