## Case No. 1,586.

### BOARD OF FOREIGN MISSIONS OF THE PRESBYTERIAN CHURCH v. McMASTER.

#### [4 Am. Law Reg. 526.]

Circuit Court, D. Maryland. March 26, 1855.

COURTS—FEDERAL AND STATE — CONCURRENT JURISDICTION—WILLS—BEQUEST IN TRUST—UNCERTAINTY.

1. Where the courts of a state in their ordinary jurisdiction as courts of equity, undertake to aid and direct an administrator in the execution of his trust, and where the interests of the state's own citizens as well as of non-residents are involved, and the non-residents are made parties to the cause in the manner pointed out by special legislation, the rule of comity requires that paramount authority should be yielded to the court before which the proceedings were first instituted, and where the jurisdiction first attaches, notwithstanding the courts may have concurrent jurisdiction, one being a federal and the other a state tribunal.

2. A bequest in a will "I leave the whole of said fund in the hands of my executor, to be by him applied to the support of missionaries in India, as it is my desire to aid, &c., the same to be applied under the direction of the General Assembly's Board of Missions of the Presbyterian Church in the United States," is void for uncertainty.

[Questioned in Loring v. Marsh, Case No. 8,514.]

[In equity. Bill by the Board of Foreign Missions of the Presbyterian Church in the United States of America against Samuel S. McMaster, administrator de bonis non with the will annexed of Anne P. White, to en-

force the payment of a bequest. Bill dismissed.]

Mr. Wallers, for complainant. Mr. Bartol, for defendant.

GILES, District Judge. This bill was originally filed 26th March, 1855, by the complainants above named against the defendant McMaster, as administrator de bonis non, with the will annexed, of Anne P. White, to enforce the payment of a bequest contained in the will of Miss White. Subsequently an amended bill has been filed, making "The Trustees of the General Assembly of the Presbyterian Church in the United States of America" parties complainants to the cause. The will which gives rise to this controversy contains the following provision: "It is my will and desire, that the remainder of my money remain in the hands of Mr. Lewis West and Mr. David White, and I hereby direct them to pay over to my mother the interest thereof every year whilst she is a married woman, and if she should ever be a widow, I leave the whole sum to her to be at her disposal. And if my mother is never a widow and departs this life in a married state, I leave the whole of said fund in the hands of my executor to be by him applied to the support of missionaries in India, as it is my desire to aid in the instruction of the poor heathen in the way to life everlasting. The same to be applied under the direction of the General Assembly's Board of Missions of the Presbyterian Church in the United States."

It is admitted that the mother of Miss White died in 1854 a married woman; that Miss White died in 1843; that George Hudson, the executor named in the said will, is dead; and letters of administration de bonis non, with the will annexed, on the estate of Miss White have been granted by the orphans' court for Worcester county (the place of Miss White's residence) to the defendant, and that he has paid the debts of the deceased and other legacies mentioned in her will, and has now in hand the sum of $4,-521.87, to be applied to the bequest mentioned in the clause of the will hereinbefore recited, if the same be valid. The will itself bears date in 1839. The answer filed by the defendant states that the said amount in his hands has been claimed by the surviving husband of Mrs. Williams, the mother of Miss White, and also by her next of kin, on the ground that the above bequest is void and cannot be enforced by any one, and is also claimed by the complainants, and that to protect himself in the settlement of Miss White's estate he has filed a bill of interpleader in the circuit court for Worcester, against all the said parties, which is still pending in that court, and in which cause an order of publication has been passed against the original complainants in this cause, as absent defendants.

This cause has been heard on bill and answer, and is now submitted for final decree. Its discussion involves two very interesting questions.

1st. Has the circuit court for Worcester county full jurisdiction of this case on the bill of interpleader filed by defendant? and 2d. What is the character of the bequest in controversy? Is it not void in this state, as being too indefinite and uncertain? Now, in the examination of the first question, it must be admitted by all, that if the circuit court for Worcester county has jurisdiction, as the bill of interpleader was filed in it in 1854, long before the institution of this suit, it would be the duty of this court to suspend further proceedings in this cause to await the action of the circuit court for Worcester county. This is the courtesy which courts of concurrent jurisdiction should exercise towards each other. For where different courts have concurrent jurisdiction, that before which proceedings are first instituted, and where jurisdiction first attaches, has authority paramount to the others. See Stearns v. Stearns, 16 Mass. 171; Smith v. McIver, 9 Wheat. [22 U. S.] 532; The Robert Fulton [Case No. 11,890]; Peck v. Jenness, 7 How. [48 U. S.] 624; 3 Story, Const. 624; Winn v. Albert, 2 Md. Ch. 42; Brown v. Wallace, 4 Gill & J. 495; Wallace v. McConnell, 13 Pet. [38 U. S.] 136. Now, had the circuit court for Worcester county jurisdiction in this matter so as to affect the rights of the complainants? Complainants being non-residents, have their option to bring their suit in this court, unless they have submitted or are made parties in some form to the cause in the said circuit court for Worcester county. While it is admitted that no judgment in personam will be valid against a non-resident not served with process and who has never appeared to the suit, yet all our courts act daily upon the rights of non-residents through their property, either real or personal, found within their jurisdiction, and such judgments are valid and binding. This is the basis of our attachment laws and of our proceedings to sell real estate for division, &c., even though non-residents may be interested.

The estate of Miss White must be administered by the defendant under and according to the laws of this state, and in the execution of his trust, he had the clear right, if from any circumstances he could not safely administer the estate, except with the aid and under the direction of a court of equity, to apply to the circuit court of Worcester county, in the manner he has pursued. By such a course, the rights of every claimant would be examined, and full and adequate relief and protection afforded to the defendant in the settlement of his trust. And by the act of this state passed in 1826 (chapter 199), full and ample notice of six months by the order of publication, is given to the complainants, warning them to appear and maintain their title to the

said bequest. But the learned solicitor for the complainants has contended that, as they are non-residents, they have a constitutional right to have their cause decideu alone by a circuit court of the United States. Such is no doubt the right of the non-resident in suits in personam or in attachments against his property to compel his appearance; and where a judgment is sought against him in personam. But it is doubtful whether it can be extended to embrace a case like this, where the courts of this state in their ordinary jurisdiction as courts of equity, undertake to aid and direct an administrator in the execution of his trust; and where the interests of citizens of this state as well as of non-residents are involved, and the non-residents are made parties-to the cause in the mode pointed out by the statute. By the 12th section of the act of congress of 1789, c. 20 [1 Stat. 79], provision is made for the removal of a suit brought in a state court against the citizen of another state, to the circuit court of the United States, where the amount claimed exceeds the sum of $500. But this provision has been decided only to apply to cases where the non-resident is sole defendant, or all the defendants are non-residents. This case, therefore, could not be removed to this court under that act. And the 11th section of the same act gives original cognizance concurrent with the courts of the several states to the circuit court of all suits at common law or in equity, where the matter in dispute exceeds, exclusive of costs, the sum or value of $500, and the suit is between a citizen of the state where the suit is brought, and a citizen of another state, &c., &c.

The two cases to which I have been referred to sustain the proposition of the learned counsel, are Suydam v. Broadnax, 14 Pet. [39 U. S.] 67, and Shelby v. Bacon, 10 How. [51 U. S.] 56. In the first case the plaintiffs were citizens of New York, and the defendants were administrators of Newton, a citizen of Alabama, whose estate had been declared insolvent in a proceeding taken under a statute of that state which provided, that in such a case no suit or action should be commenced against the administrator. The supreme court only decided that the plea that the estate of the deceased was insolvent, was not sufficient in law to abate the plaintiff's action in the circuit court. In the second case, the bill was filed in the circuit court of the United States, in Pennsylvania, by a citizen of Kentucky, against the assignees of the late Bank of the United States, to maintain his claim and for a distribution of the assets of said bank. The defence was, that the assignees had filed the accounts for their receipts and disbursements in the proper court in Pennsylvania, and were there alone responsible; and that the circuit court had no jurisdiction in the matter. But the supreme court

overruled the plea, and decided, that as the proceeding in the state court was not a proceeding in rem, and as the complainants had not submitted or been made a party in any form, to the special jurisdiction of the state court, the said plea was no bar to the bill of the complainant. I confess that the question is one of great difficulty, but I can see no safer way of preventing a conflict between the action of the federal and state courts, than in cases similar to the one now before me, to adhere strictly to the rule of courtesy to which I have referred, and to leave to the court which first takes jurisdiction of the matter, its final adjudication. And this I understand to be the view of the law upon this subject taken by Judge Curtis in the case of Mallett v. Dexter, Administrator of Fenner, to be found in [Case No. 8,988]. That case was similar in many respects, to this. A bill was filed by complainants, some of whom were non-residents of Rhode Island, in the circuit court of the United States for that state, against the defendant as administrator of Fenner, for an account and settlement of his administration; and the defence was that the defendant was in process of settling his administration before a probate court of Rhode Island, and ought not to be compelled to account in this court; and so Judge Curtis decided, with the case of Shelby v. Bacon, 10 How. [51 U. S.], before him.

The second question, it appears to me, is free from all difficulty, and however much I may regret that the pious intentions of the testatrix will be defeated, yet sitting here to decide this question in accordance with the law of this state, I cannot do otherwise than pronounce the bequest void for uncertainty. The money is to be retained by the executor, to be by him applied to the support of missionaries in India under the direction of the General Assembly's Board of Missions, &c. The executor is the trustee, and the missionaries are the cestui que trusts; and the board of missions is merely the agent to direct the manner in which the money shall be applied to the beneficiaries of the trust. Now, who can enforce the execution of this trust in a court of chancery? What missionaries are meant, all the missionaries in India of every denomination, or only those of the Presbyterian Church? and if the latter, those in India to-day, or only those who were there when the testatrix died? For I take it to be the true rule of law in reference to all such bequests, that the beneficiaries of the trust must be certain and definite; so clearly ascertained that they have a standing in a court of equity to enforce the trust. If such be the case, the bequest is good, although there may be no trustees appointed by the will to carry out the trust, or in whom the legal estate can vest. But whether there be a competent trustee or not, if the cestui que trusts are not clearly ascertained by the will, the de-

vise or bequest is void. Such is the unbroken current of decisions in this and all other states which have not adopted the statute of charitable uses of 43 Eliz.

I need only refer, in support of this, to the following cases: Dashiell v. Attorney General, 5 Har. & J. 398, 6 Har. & J. 7; Baptist Ass'n v. Hart's Ex'rs, 4 Wheat. [117 U. S.] 1; Wheeler v. Smith, 9 How. [50 U. S.] 76; and to the case of Meade v. Beale [Case No. 9,371], decided in this court by my brother, the chief justice. In that case, a bill was filed in this court by the complainants, who represented "the Education Society of Virginia," to enforce a bequest "to the Education Society of Virginia for the benefit of the theological students at the Protestant Episcopal Theological Seminary, near Alexandria, in the District of Columbia. The chief justice decided that the bequest in that case was void by the laws of this state; and even if the Education Society had been incorporated and competent to become a legal trustee, the description of the cestui que trusts was so vague and indefinite, that it would be impossible for the court to enforce or supervise the execution of the trust. This view of the law relieves me from the necessity of considering the argument of the complainant's solicitor, in reference to the right and capacity of "the Trustees of the General Assembly of the Presbyterian Church in the United States of America" to receive and take all bequests made to "the General Assembly's Board of Missions," a body not incorporated and not now in existence; or to the right of the original complainants to enforce a bequest made to the "General Assembly's Board of Missions."

Being of the opinion, therefore, that this bequest in Miss White's will is void for the reasons I have given, I will sign a decree dismissing the bill filed in this case, with costs.