## Ex Parte Clifford.

CONVICT.—ESCAPE.—Where a prisoner escapes after conviction, and is not retaken until after the expiration of the time for which he was sentenced, he may be held until he has completed the full term for which he was sentenced.

SAME.—STATUTE CONSTRUED.—The statute (2 G. & H., §§ 55, 56, p. 454,) was not intended to change the common law rule in regard to the capture of escaped felons, but only to authorize an additional holding after the sentence has been fulfilled, until a prosecution can be instituted for the escape.

APPEAL from the *Laporte* Common Pleas.

RAY, J.—*Clifford* sued out a writ of *habeas corpus* on his petition, averring that he is restrained of his liberty in the northern state prison, by the warden thereof; that he was committed for the term of three years by a judgment of the *Montgomery* Circuit Court, rendered on the 13th of *September*, 1862; that the period has long since elapsed; that it is charged that he escaped before the expiration of

the term, and that he is now detained solely on that ground; that he is held solely on the alleged knowledge of the escape by the officers of the prison; that two sessions of the grand jury of the county have been held since the charge of such escape was well known to the prosecuting attorney of the circuit in which said county is embraced, and that the said jury has wholly failed to find a bill of indictment against him therefor.

The warden answered, that he held *Clifford* by virtue of a commitment which is set forth in the return, showing that the latter was, by the *Montgomery* Circuit Court, found guilty of grand larceny, and, on the 13th of *September*, 1862, sentenced to be imprisoned in the state prison for the term of three years. The return further avers, that on the 9th of *January*, 1863, *Clifford* escaped and remained at large until the 4th of *April*, 1867; that on that day he was returned (having been re-arrested) to his custody as such warden, and that he holds him by virtue of said commitment.

The petitioner excepted to the sufficiency of the return. The court below overruled the exception, and held that the return was good, and remanded *Clifford* to prison. The sufficiency of this return presents the question for our determination.

The statute provides that "every convict confined in the state prison, who shall escape therefrom, upon conviction, shall be imprisoned in the state prison, not exceeding double the length of time for which such escaping convict was originally sentenced, to commence from the expiration of the original term of his or her imprisonment. If any prisoner confined in the state prison shall escape therefrom, he or she may be retaken, and imprisoned again, notwithstanding the term for which he or she was sentenced to be imprisoned may have expired when he or she shall be retaken, and shall remain so imprisoned until tried for such escape, or until he or she be discharged on a failure to prosecute therefor." 2 G. & H., §§ 55, 56, p. 454. The

question presented for our consideration is, whether the appellant can avail himself of the fact that while he was illegally at large, the date at which his imprisonment was to have terminated has passed. The law is stated by RUSSELL, in his work on Crimes, vol. 1, p. 421, thus: "It seems to be clearly agreed, by all the books, that an officer making fresh pursuit after a prisoner, who has escaped through his negligence, may retake him at any time afterwards, whether he find him in the same or a different county; and it is said generally in some books, that an officer who has negligently suffered a prisoner to escape, may retake him wherever he finds him, without mentioning any fresh pursuit; and, indeed, since the liberty gained by the prisoner is wholly owing to his own wrong, there seems to be no reason why he should have any manner of advantage from it."

The sections of the statute we have cited are contained in "an act defining felonies and prescribing punishment therefor."

It did not require legislation to authorize the recapture of an escaped prisoner, and his confinement until he has served out the full continuous term of his sentence. Nor would we expect, in such an act, any limitation of that right. A new crime is defined and a punishment prescribed. That punishment, however, is fixed, without regard to whether the prisoner escaping was recaptured immediately after his escape, and has served out his full term, or whether he has not been recaptured until the date when his imprisonment would have ended has passed. If, in the latter case, he avoids serving his original term of imprisonment, and is only punished for his escape, as is the prisoner recaptured immediately after his flight, the penalty is unequal and unreasonable and amounts to a premium upon success in avoiding capture.

The intention of the framers of the law must be the chief guide to the true meaning of the statute. And this is to be gathered "from the occasion and necessity of the

law, from the mischief felt, and the objects and the remedy in view; and the intention is to be taken, or presumed, according to what is consonant to reason and good discretion." 1 Kent 511. The reason for and the object of the statute are a clue to the true meaning. And when the real intention is accurately ascertained, it will always prevail over the literal sense of the terms. 15 Johns. 358; 14 Mass. 92; 4 Comst. 144. For it is a maxim of interpretation as old as PLOWDEN, that "a thing within the letter of the statute is not within the statute, unless it be within the intention of the makers." Plowd. 18, 88; 3 Barn. & Ald. 266; 4 id. 212; 3 Cow. 89; 4 Litt. (Ky.) 377.

In this act, the declared purpose is to define a felony and prescribe its punishment. We do not think it was intended to change the common law rule in regard to the capture of escaped felons, but simply to authorize the additional holding, after the sentence of the law has been fulfilled, not evaded, until opportunity is given for a prosecution for the new offense of escape. The word "term," in the 56th section cited, is used, we think, as the synonym of the word "time." It is objected that this construction leaves it to the officer in charge of the prison to determine the question of the escape and its date, but a writ of *habeas corpus* will secure a judicial examination of this question.

The judgment is affirmed, with costs.

*J. B.* and *W. Niles*, for appellant.

*D. E. Williamson*, Attorney General, for the State.