# Court of General Sessions of the Peace and Jail Delivery.

McCoy *v.* Sheriff of New Castle County.

*Criminal Practice—Sentence—Escape—Arrest.*

Notwithstanding Code Del. p. 795, provides that "when imprisonment is part of the sentence, the term shall be fixed, and its commencement and ending specified," a prisoner who escapes before his time is served, and remains at large until his term is up, is liable to arrest for the purpose of carrying his sentence into effect. Such a case is governed by the maxim, *nullus commodum capere potest de injuria sua propria.*

(*New Castle, November, 1886.*)

On petition for *habeas corpus.*

The petitioner was convicted of burglary with intent to commit larceny, and sentenced by the Court of General Sessions of the Peace and Jail Delivery for New Castle county to imprisonment for 10 years, to commence December 10, 1873, and to end December 9, 1883. Six months after sentence he escaped. He remained at large until his term of imprisonment had passed, when he was discovered in the city of New York, and delivered to the sheriff on extradition proceedings. He thereupon sued out this writ.

Grubb, J., heard the case in vacation and rendered the following decision:

This case is before me upon a writ of *habeas corpus* awarded, issued and directed to Thomas Ford, sheriff of New Castle county,

in the State of Delaware, upon the petition of Frank McCoy, presented September 1st, 1886.

The facts set forth in the petition are omitted.

The petitioner asks that he be discharged on the ground that the term for which he was imprisoned has expired by mere lapse of time, although the period of his actual imprisonment has been less than that for which he was sentenced by reason of his unlawful escape and absence at large for a period of nine years, seven months and ten days, or thereabouts.

The legal aspects of this case are novel, as the career of the petitioner is notable in the criminal annals of our State. This case differs from all the cases cited in argument in two respects; first, that though cases have been cited where in the sentence the term of imprisonment was fixed and its commencement specified, yet none have been found where the ending also was specified; second, that while a statute in Delaware prescribes that in the sentence the term of imprisonment shall be fixed and the time of its commencement and ending specified, no case has been cited which was subject to the operation of any similar statute in respect either fixing the term or specifying either the time of its commencement or ending. In these respects, therefore, the question raised in this case seems to be as novel elsewhere as it is of first impression in this State.

The principal inquiries in the determination of the pending case, therefore, are:

First—Can a prisoner who has unlawfully escaped be recaptured after the date specified in his sentence for the ending of his prescribed term of imprisonment and legally be required to serve thereafter a period equal to his illegally being at large, in actual fulfilment of the entire term or amount of the imprisonment fixed in his sentence in case no statute prescribes either that the term shall be fixed, or its commencement specified or its ending specified?

Second—And, if so, should the law be otherwise in case a statute, as in the present instance, expressly prescribes that " when

imprisonment is a part of the sentence the term shall be fixed, and the time of its commencement and ending specified ?"

The satisfactory solution of these questions must, I conceive, be found in the consideration of the following inquiries, viz:

First—Is a wrong-doer to be permitted to take the advantage of his own wrong?

Second—Is the date and manner of the punishment to be of greater importance than its kind and amount?

Third—Is the strict letter to prevail over the general purpose of a statute, and an absurd instead of a reasonable intention to be attributed to the law-maker?

A careful examination of the authorities will, I am satisfied, upon both principle and precedent, furnish a negative answer to each of these inquiries.

More than two centuries ago, that wise and just maxim of the common law, which is the controling principle of this case, was expressed by Sir Matthew Hale in his Pleas of the Crown, page 602, as applicable to an unlawful escape, in these words: "If a felon escapes out of the gaol by negligence though the gaoler be fined for it, he may retake the felon at any time after, for the felon shall not take the advantage of his own wrong, or the gaolers punishment; but his retaking shall not discharge the gaolers fine." And this common law maxim has from his day to the present been constantly enunciated by courts until it has become a settled and generally recognized principle of criminal jurisprudence.

In its application to unlawful escapes from legal imprisonment it assumes that the object of punitive law, whether common or statutory, is to protect the public by preventing the commission of crime and that this end is best sought by the infliction of penalties designed to deter or reform those disposed to commit crime.

Punishment then, is the main purpose of the law and of the judgment pronounced in conformity therewith, and the kind and amount of punishment, and not the mere date or manner of its execution, are the essential and substantial part of the sentence, 21

*Kansas Rep.*, 638, 646-48 ; 1 *Bishop Cr. Proceed.*, Secs. 1310, 1384. The term or amount of the imprisonment, where that is part of the punishment, is of chief importance in the eye of the law, while the specification of the date of its commencement and the mere mathematical calculation and specification of the day of ending of the prescribed term or quantum are minor matters of convenient detail only. When the term or quantum is fixed the dates of commencement and ending are necessarily contained and implied in the term or quantum as thus fixed, and need no particular calculation and specification except, perhaps, for the information of the ignorant convict who may be under sentence; but which advantage he may forfeit by an unlawful escape. When no commencement is specified, the day of sentence will, in legal contemplation, be the commencement of the term. The specifying of the dates of commencement or ending, in the sentence which fixes the term or quantum of imprisonment is, therefore, not a matter of absolute necessity, but of convenient detail only, and hence ought not to operate to lessen the fixed term or quantum of the punishment; as it would do in case of unlawful escape and protracted illegal absence, as well as contravene the sound maxim of law referred to.

Both common sense and the purport of punitive law require that the convicted and sentenced criminal shall suffer the whole, and not unlawfully escape from any part of his prescribed punishment; that expiration of time without actual imprisonment shall in no sense be deemed an execution of the sentence; and that four months in prison and more than nine years out of it, shall not mean being "imprisoned 10 years," as this sentence prescribes. It is no sufficient answer to urge that both to recapture and re-imprison the escaping prisoner after the original term of his imprisonment had in mere course of time elapsed, would be an enlargement of his sentence and an increase of his punishment, and therefore in violation of the principles of law enunciated in the numerous authorities cited in that behalf.

This is not a case to which those authorities are applicable, for

here there is no attempt to enlarge the original term or increase the original quantum of punishment, but merely to secure the execution of the same original sentence and to see that the imprisonment for 10 years is wholly suffered by making the prisoner, in addition to the four months or so, actually served, further undergo the remaining nine years and more of this being illegally at large, and thus complete his original term by actual imprisonment.

Nor is it sufficient to object that, because an indictment and conviction for an unlawful escape may possibly be had, and the prisoner thereby be punished by imprisonment for a period sufficient to cover the time of his being illegally at large, therefore the prisoner may not after his prescribed term has expired, by lapse of time merely, be retaken and reimprisoned until its fulfillment by actual imprisonment.

The offence of escaping from lawful imprisonment is another and entirely different crime from that for which the petitioner was sentenced and is now held and, as such, is subject to its own peculiar and appropriate punishment.

In *Cleek v. Commonwealth*, Virginia Court of Appeals, 21 Grattan, 782, the court say, " Surely a man can not avoid the punishment of one crime by committing another ; cannot get rid of an imprisonment to which he has lawfully been condemned by breaking jail and making his escape. Nothing would seem to be plainer than this."

And in *ex parte* Clifford, Supreme Court of Indiana, 29 Ind. 106, this objection was directly raised and expressly overruled ; the court there holding first, " that where the prisoner escapes after conviction and is not retaken until after the expiration of the time for which he was sentenced, he may be held until he has completed the full term for which he was sentenced ; " and second, " that the statute " (of Indiana, providing for a recapture of an escaping convict and punishment for the escape,) " was not intended to change the common law rule in regard to the capture of an escaping felon, but only to authorize an additional holding after the sentence has

been fulfilled, until a prosecution can be instituted for the escape." The court in this case expressly declared: "It did not require legislation to authorize the recapture of an escaped prisoner, and his confinement until he has served out the full continuous term of his sentence;" and, thereby the court distinctly denied the claim that there was anything in the authority to indict and punish for an unlawful escape, whether given by the Indiana statute or at common law, which would negative the common law principle affirming the right to recapture and reimprison an escaping convict until he had wholly suffered his prescribed term, even after the expiration of it by mere lapse of time.

The court, in this case, also recognized that a penal statutory provision was to be construed as if enacted in view of and subject to this common law principle, as may reasonably be held in regard to our statute in its effect upon the pending case.

And the law as declared in this Indiana case in 1867, was, subsequently in 1879, expressly approved and affirmed in *Hollon v. Hopkins,* Supreme Court of Kansas, 21 Kansas, 638, 644.

The Kansas court, in this case, in a comprehensive review of the leading and latest authorities bearing upon the law applicable to the case now under consideration has satisfactorily shown that the principles needful to the determination of the present case against the petitioner's application have been authoritively settled.

It is true that neither this Kansas case nor any reviewed by it furnished an instance where the ending of a fixed term of years, or other divisions of time was specified in the sentence, either with or without a statutory provision prescribing this. But the same principles which were recognized in those cases and governed them are equally applicable to, and decisive of a case like the present, which furnishes such an instance. At least, they extend decisively to a case where the ending of a fixed term of imprisonment may be specified in the sentence in the absence of any statute requiring it, as was in fact conceded by the petitioner's counsel in the argument.

But it was nevertheless strenuously contended in the pending

case that when such a statute exists, as in this case it does, the result was contrary; that a penal statute must be strictly construed word for word, be the consequences what they may, and that therefore, when the words " ending December 9th, 1883 " were inserted in the sentence conformably to our statute, the effect was to make that date the absolute end of the petitioner's imprisonment, whether he had, or not, actually suffered imprisonment continually during the 10 years next preceding that date.

But it must be remembered that the ancient rule of law that penal statutes were to be construed strictly, in *favorem vitae*, has been greatly modified in modern times. " in the early stages of English jurisprudence," says Sedgwick, " it was often invoked and acted upon by the judges, partly, no doubt, from a humane desire to mitigate the rigors of the criminal law as it then stood." *Sedgwick's Statutory Law*, 280, 282.

It is an impressive fact, that in England in 1765, there were no less than one hundred and sixty different offences punishable by death, and in 1810, nearly double that number; while in 1844 this " dreadful list " had been reduced to 12 only. Thus, the cause having been removed, the ancient strictness of construction in *favorem vitae*, has ceased, and hence the more reasonable modern rule of construction of penal statutes now prevails.

For instance: In *Commonwealth v. Loring*, 8 Pick., 374, it was said by Parker, chief justice, delivering the opinion of the court, " But it is said that penal statutes admit of no latitude of construction; that they are to be taken strictly, word for word, let the consequences be what they may.

It is true it is so laid down as a general rule; and the reason is that the Court shall not be allowed to make that an offence which is not made so by the legislative enactment. But the rule does not exclude the application of common-sense to the terms made use of in the act, in order to avoid an absurdity, which the Legislature ought not to be be presumed to have intended. There are cases which show this, although precedents would not be required to sustain so reasonable a doctrine."

And Judge Story, in another case, has said, "But in constru-ing a statute we are to take into consideration all the provisions thereof, and to look to all the objects and the entire intent of the statute."

In *Bacon's Abridgment*, Vol. 6, page 382, it is said: "If divers statutes relate to the same thing, they ought to be all taken into consideration in construing any of them;" and again, page 391, "Such a construction ought to be put upon a statute as does not suffer it to be eluded."

With these canons of construction kept in view, it ought not to be difficult to reach a conclusion in the case under consideration.

The petitioner has been convicted under the provisions of Sec. 8, Chap. 128, of our Code which defines the crime, and designates the appropriate penalty, viz.: Fine, whipping, pillory and imprisonment not exceeding 10 years ; the court having the discretionary power to fix the precise number of years. The primary object of this action is manifestly punishment for crime.

The petitioner has been sentenced in accordance with the requirements of said section and also in compliance with the directions of the following clause of section 8, chapter 133 of our code, viz.: "When imprisonment is a part of the sentence, the term shall be fixed and the time of its commencement and ending specified. An act to be done at the expiration of a term of imprisonment shall be done on the last day thereof unless it be Sunday, and in that case on the day previous. Months shall be reckoned as calendar months." The exact phraseology of the petitioner's sentence has already been stated in the recital of his petition. It will be observed that section 8, chapter 133, prescribes first that the term or quantum of imprisonment shall be fixed, and second, that the time of its commencement and ending shall be specified, but does not prescribe that the court shall decree simply that he shall be imprisoned for instance from December 10th, 1873, until December 9th, 1883, without any mention or fixing of the term or number of the years of his imprisonment.

The proper consideration of this case requires that section 8, chapter 128, and section 8 of chapter 133, shall be construed together as well as the several clauses respectively of section 8, chapter 133 ; so that the language in question may be viewed in its just relation to the general provisions and policy of our punitive legislation.

Viewing it thus it seems indisputable that the only reasonable interpretation of the said language as used in the statute, and in the sentence rendered in conformity therewith, is that the Legislature intended and expected—as did the court in rendering it—that the prisoner would (as the law presumes) remain in prison continually for the prescribed number of years next preceding the time specified for the ending of his term of imprisonment, and they, therefore, directed such time to be named as the ending thereof, for reasons of convenience merely.

For, if they expected the prisoner so to remain, how can it be truly said that they intended that the time so specified should be the absolute ending of the term, if, in fact, he should really escape and not actually remain in prison even one-tenth of the prescribed number of years ?

The conclusion seems unavoidable that our statute, in requiring the said times of commencement and ending to be specified, simply prescribes a rule of mathematical convenience as a matter of descriptive detail which is subordinate to the paramount rule of fixing the term or quantum of the imprisonment.

To adopt this view, is to give a consistent and reasonable effect to the entire statute.

To maintain the contrary, is to hold that our Legislature intended that what was of lesser should control that which was of greater importance, and that what was not indispensable should be paramount to that which was absolutely necessary. This would be *reductio ad absurdum*. It would maintain that our General Assembly intended to reward the convicted criminal by a reduction of his punishment if he would study to elude instead of suffer the just

penalty of his crime; and thus to furnish an inducement instead of a punishment for the violation of law, and an encouragement for criminals to persist in rather than desist from crime.

I prefer, in the determination of this case, to adopt the more reasonable view—that our General Assembly, in the enactment of this statute, had in view our entire punitive policy and the common law maxim and principles already referred to, and therefore intended that the criminal who should commit the additional crime of unlawfully escaping from legal imprisonment should be compelled, whenever recaptured, whether before or after the specified ending of his prescribed term, to suffer actual imprisonment equal to the entire original term or quantum imposed by his sentence.

In the present case the petitioner was sentenced to be—to quote the actual language of the court—"imprisoned 10 years;" as well as to be whipped and pilloried, and to pay $500 fine and the costs of prosecution.

The whipping and pillory portions of the sentence have been inflicted, but he has never yet been "imprisoned 10 years," because, owing to unlawful escapes, he has been illegally absent from his prison for a period of nine years, seven months and 10 days, or thereabout.

To undergo and complete his full term of imprisonment, therefore, he should suffer further imprisonment equal to that portion of the 10 years of his prescribed term during which he was unlawfully absent from our county jail.

But even if this view of the law should be incorrect, so far as it relates to the imprisonment imposed by the sentence, yet the petitioner may, nevertheless, be held until be has paid the fine and costs imposed thereby, which it appears he has not yet done.

I am constrained, therefore, to decide that the petitioner may lawfully be held until the sentence of the court has in all respects been carried into execution.

It is, therefore, ordered that the writ and proceedings be dis-

missed, and that the petitioner be remanded to the custody of the sheriff of New Castle county.

At the hearing of the case in Court the Attorney-General moved to dismiss the petition, on the ground that the case had already been decided by Grubb, J., in vacation. The court refused the motion.

*John Biggs*, Depty. Atty. Gen., for the State, cites:—

1 *Hale, P. C.*, 602; 1 *Bish. Crim. Pr.* (3d Ed.) §§ 1382-1385; *Ex parte Edwards*, 3 *Crim. Law Mag.*, 201, (Van Syckel, J.:) *Cleek v. Com.*, 21 Grat., 777; *State v. Cockerham*, 2 Ired., 204; *Ex parte Clifford*, 29 Ind., 106; *Dolan's Case*, 101 Mass., 219; *Hollon v. Hopkins*, 21 Kan., 638 . *Hurd. Hab. Corp.*, § 4, p. 21; Id. § 2, p. 218; Id. § 3, p. 331; 1 *Harr.*, 392; 9 *Wheat.*, 532; 8 *Ohio*, 579; 1 *Md. Ch.*, 272; 2 *Md. Ch.*, 42; 1 *Fla.*, 198; 3 *Yerg.*, 169; 5 *How.* (Miss.) 80; 1 *Curt.*, 178.

*Alex. B. Cooper*, for petitioner, cites:—

*Hurd. Hab. Corp.*, 562, 563; 8 *Reporter*, 121; 6 *Johns.*, 429; 13 *Mees. & W.*, 678; 4 *Gill.*, 304; *Hurl. & Co.*, 565, 567; *St. Md.*; 4 *Gill.*, 304; 25 *Md.*, 505; *Ex parte Coston*, 23 *Md.*, 271; *People v. Brady*, 56 *N. Y.*, 183; 1 Pen. & W., 82; 6 Johns., 424; 8 State Trials, 90; 4 Harr., 572.

HOUSTON, J., delivered the opinion of the Court:

The question involved in this case is purely a question of law; for it depends solely upon the construction this court is to give to the words of so much of the sentence pronounced upon the petitioner and others, on their conviction of the crime of burglary several years ago in the court of general sessions of the peace and jail delivery in and for this county, as fixed the term of 10 years for his imprisonment in the jail of the county, to commence on the

tenth day of December, 1873, and end on the ninth day of December, 1883, and also to the words of the statutory provisions prescribing the manner and form in which so much of the sentence is entered in the record of the court. And, in consequence of its depending entirely upon this question, the case is not only a novel and peculiar one, and very different from any one of the many cases cited by the learned counsel for the petitioner in his argument but is believed to be wholly unprecedented both here and elsewhere, as this mode of entering a sentence of imprisonment for the punishment of crime seems not to have been adopted in any other state, while here it is expressly prescribed by statute, and has long been pursued in our criminal courts.

I have carefully considered this question, and examined all of the cases to which we have been referred, and fully concur in the correctness of the decision of the court in each of them on the facts of the case, and the question or questions of law involved in them, respectively, down to and including the *Case of Wright*, recently decided, since this case was argued, in the court of quarter sessions in Philadelphia, on a writ of *habeas corpus* by him against the keeper of the county prison in that city and county, and to a newspaper report of which my attention has been still more recently called; but, like all the other cases, it was materially different from this case. According to the brief statement of it, the petitioner, Wright, was sentenced on the fifth day of February, 1886, to a term of imprisonment for seven months in the county prison. While serving out the term of his sentence, on the fifteenth day of April, 1886, upon the petition of one of the keepers of the prison, and the certificate of two physicians, he was sent to the state hospital for the insane at Norristown. Having recovered, he was returned to prison on the twenty-ninth day of September, 1886, where he remained at the time when the writ of *habeas corpus* was issued, on the twenty-first day of October, 1886. His detention in prison after he was returned there, and beyond the date when the seven months limited in the sentence expired, was based

upon the theory that the period of time which he spent in the hospital for the insane was not to be estimated as a part of such term. But Judge Wilson took an entirely opposite view of the case, and in an opinion of some length granted the petition, and discharged the prisoner; and, although that is perhaps as much like this case as any cited, yet there is at least one very material difference between them, which consists in the important fact that there was no breach of prison, or unlawful escape from the imprisonment, by the prisoner in that case, as in this; for the removal of the prisoner from the prison to the hospital was the act of the keeper or keepers of the former, to whose custody he had been committed under the sentence, and, under the circumstances disclosed, was evidently warranted by law in that case. But this case is distinguished from it in several other essential particulars both in law and fact; for, to contemplate it in its true character, it is proper for the court to observe that in this case, upon the trial and conviction of the prisoner on an indictment for the crime of burglary with intent to commit larceny merely, the court went to the full extent of its power and discretion in imposing sentence upon him so far as the penalty of imprisonment was to be a part of it, and fixed 10 years as the term of it, and that in less than six months after the commencement of it the prisoner broke jail, and unlawfully escaped from imprisonment as a fugitive from justice beyond the limits of the state, and as such was at large during the entire residue of the term, and until, on its afterwards coming to the knowledge of the governor of this state that he was then in the city of New York, he proceeded, pursuant to the official authority and the duty imposed upon him for the purpose, in due form to demand him as such from the governor of the state of New York, under the provisions of the second clause of the second section of the fourth article of the constitution of the United States, and in acccordance with it he was delivered up in that state, and was removed to this, and committed, as such fugitive from justice, to the custody of the

sheriff of New Castle county, and by him to his subsequent and present imprisonment in the jail of it.

In several of the cases cited by the counsel for the petitioner, the application of the prisoner for relief from his imprisonment was based and granted upon some fatal error committed by the court, and apparent on the record in entering the judgment and sentence, or in attempting to modify or alter a sentence too long after it had first been entered by the court in the case; but in this case nothing of that kind has been alleged, or can be shown, or any interference whatever by the court with the sentence or record, or any action whatever by the court in the case after it had been closed, and the judgment and sentence had been originally entered in it. On the contrary, the record and sentence in this case stands now in all respects just as it stood then, so far as any further action of the court upon it in any way was concerned. No cited case of the kind which I have last referred to, therefore, can have any application to the facts of this case, or furnish any but a false or mistaken light for the sound consideration and proper decision of it. Nor has that court had anything since to do in or with the case, until this petition was presented in this present case. But just as the unlawful escape of the prisoner and petitioner left it suspended, unexecuted, and wholly inoperative for more than 10 years, it stood until the executive, not the judicial, department of the state government, pursuant to the power and authority conferred upon it alone, in such a case and for that purpose, by the constitution of the United States, proceeded upon the evidence of it, as it was its official duty to do, without any action, direction, or participation of the court with him in the matter, to recapture and retake him, as a convicted felon and fugitive from justice into another state from this state, and to remove him to this, and to recommit him to his imprisonment here, to be proceeded against according to law. There is no limitation to this proceeding provided in the constitution of the United States, or prescribed by any statutory provision of the United States or of this state, and it may therefore be instituted at any time.

The only ground, however, on which the petitioner in point of fact rests his claim to be discharged from his imprisonment under that proceeding, is the fallacious allegation and assumption that, according to the literal terms of the sentence, and according to the true intent and meaning of the statutory provisions under which it was framed, the term of 10 years' imprisonment fixed and imposed by it absolutely ended on the ninth day of· December, 1883, because, as his counsel contends, the language of the statutes referred to is unambiguous, and the plain, intelligent reading of them makes the term absolutely end, in the petitioner's case, on that day. But if that was so, by the same rule of construction and process of reasoning, and sticking fast in the mere letter or words of the statutory provisions in question, it could with equal truth and justice be said that the term of imprisonment absolutely ended on the day of his escape from prison by reason of his continuing a fugitive from justice at large until after the ninth day of December, 1883. If such be sound law, or a sound construction of the language of the statutes and of the sentence, it is evident that it puts it in the power of any convict sentenced under them to a term of imprisonment, at any time to absolutely end it by an escape, and remaining at large until after the date specified in the sentence for the ending of it, which would have the practical effect to render the term of his imprisonment fixed in the sentence entirely dependent on the volition of the prisoner, and the means and opportunities he might have of making such an escape from it. But no citation of authority is necessary to show the fallacy of so construing two or more provisions of a statute, or component parts of a judgment or sentence of a court, as to render them absolutely repugnant to and destructive of each other in the practical application to the facts of any case arising under them, when they were evidently intended by the law-makers of them, and by the court which rendered the judgment, or entered the sentence, that they should be entirely consistent with each other; for it is a well-settled and familiar rule of construction in such

cases that the court shall give such an interpretation to them as to remove any apparent conflict or discrepancy between them, arising from the mere words in which they are expressed, wherever it can be done consistenly with the manifest meaning and intention of them, and it has been so ruled in this court. *Capelle v. Baker*, 3 Houst., 344.

The statutory provisions in question are as follows : *First*, that any person convicted of burglary with intent to commit larceny shall be guilty of felony, and, among other things prescribed in the penalty for it, "shall be imprisoned for a term not exceeding ten years," (Rev. Code, 772, § 8 ;) *second*, when imprisonment is a part of the sentence, the term shall be fixed, and the time of its commencement and ending specified. An act to be done at the expiration of a term of imprisonment shall be done on the last day thereof, unless it be Sunday, and in that case on the day previous. Months shall be reckoned as calendar months. Rev. Code, 795, § 8. And, so far as it imposed the penalty of imprisonment, the sentence is in these words, "and be imprisoned for ten years commencing on the tenth inst., [December 10, 1873,] and ending December 9, 1883, and is committed," etc.

The first and most substantial duty of the Court to be performed in pronouncing this part of the judgment and sentence of the law upon him, according to the clear intent and meaning and express direction of the statute, was to fix the term of his imprisonment, and which, in the exercise of its discretion, was fixed at 10 years, and which, of course, imported absolutely 10 years, no more and no less, and then immediately following that with the specification of the time of its commencement and ending, which specifically comprehended with entire accuracy the term of imprisonment for 10 years just before fixed in the sentence, and which was evidently intended by the makers of the statute to be in entire accord with the immediately preceding part of the sentence, and which as clearly meant and imported the same identical period of time ; that is to say, that his term of imprisonment should be for 10 years, no

more and no less; for I cannot imagine, much less believe, that the legislature intended, in enacting these two statutory provisions on this subject, that the second should ever have the effect, after such a sentence had been entered and the imprisonment of the convict had commenced under it, in any contingency or contingencies that might thereafter arise by reason of the unlawful escape of the prisoner from custody until the expiration of it, to impair or abridge in the slightest degree the legal force and effect of the whole sentence, or the term of imprisonment fixed in it, contrary to the true intent and meaning of the sentence and of the statutory provisions under which all such sentences in the criminal courts in this State have to be framed, and long have been framed. But as specific and positive and absolute in its terms as the sentence was that the prisoner should be imprisoned for 10 years, commencing and ending on the dates respectively stated, and constituting a mere repetition of the term of 10 years before fixed in it, there are, nevertheless, several conditions or qualifications necessarily implied in it, and to be reasonably understood when reading it; such, for instance, as provided the prisoner should not die, or be pardoned by the governor of the State, or unlawfully escape from the imprisonment in the mean time, as well as others which might be suggested, and which it was much better to be left to necessary and obvious implication than to be embodied in express terms in any codification of the statutes of the State, and which it would be no less strange than unseemly to be embodied in express terms in the judgment or sentence of any court of criminal jurisdiction in it, or in any other State; for it has ever been a well-known principle of the common law that such an escape as this was not only unlawful, and legally subjected the fugitive to be retaken at any time afterwards whenever it could be done, but it was made by the common law a crime of the same grade as that of which he had been convicted, and which in this case would have made it a felony of the same grade as the burglary of which he had been convicted, and which, for that additional felony would have sub-

jected him to the same severe penalty.. The legislature, however, saw proper, many years ago, to modify that principle and rule of the common law by statute reducing it to the grade of a misdemeanor merely, punishable, on indictment and conviction thereof, by fine and imprisonment, or either according to the discretion of the Court. But in other respects, with this alteration, the rule of the common law in regard to the unlawfulness and criminality of such an escape as the petitioner perpetrated in this case still remains in force in this State.

The principle of the common law to which I have just referred, is very well stated by the court of appeals of the State of New York, in the comparatively recent case of *Haggerty v. People*, 53 N. Y., 476, decided in 1873. The syllabus of the case is as follows: " In a case where, before the expiration of a term of imprisonment, the prisoner escapes, no new award of execution is necessary or proper. The prisoner can be retaken at any time, and confined, under the authority of the original judgment, until his term of imprisonment has been accomplished. An order in such case awarding execution of the sentence will not conclude the prisoner on *habeas corpus,* and is not reviewable on writ of error." The facts of the case were that at the Albany sessions of the court of sessions in and for the county of Albany, held on the thirteenth of March, 1872, the district attorney produced to the court an indictment of Haggerty in September, 1868, in that court, for robbery in the first degree, with the minutes of his conviction for robbery in the second degree, and sentence to the Clinton prison for three years. Haggerty was brought to the bar, whereupon the district attorney filed an information or suggestion alleging the indictment, conviction, and sentence; that he was committed to the Clinton prison; and that on the fourteenth day of October, 1869, he escaped from the prison, and had ever since been at large. The information prayed that the Court would order the execution of its former judgment, and that execution thereof might be awarded against Haggerty; that he be returned to the state prison at Clin-

ton, there to be imprisoned for the remainder of the term for which
he was sentenced to be imprisoned as aforesaid, and for that portion
of the said imprisonment he had not suffered, to wit, for the term
of one year, eleven months and four days. These suggestions
having been filed and entered of record by order of the Court,
Haggerty was asked if he had anything to say why exection of the
former sentence and judgment of the Court should not be awarded
against him. He stood mute, whereupon the Court ordered the
clerk to enter a plea or answer by him that he was not the person
executioned in the record, and, if so, that he did not escape as
alleged by the people by their district attorney. The people, by
their district attorney, replied, *ore tenus*, that he was the same per-
son, and did escape as before alleged; and this the said district
attorney was ready to verify. A jury was then impaneled to try
the issues thus presented, and a trial thereof had. The jury found
the facts as alleged in the information, and it was thereupon ordered
and adjudged by the Court that execution of said former sentence
be adjudged against said Thomas Haggerty; that he be returned
to said state prison at Clinton, there to be imprisoned and confined
at hard labor for the remainder of the term for which he was sen-
tenced to be imprisoned as aforesaid. This proceeding and judg-
ment was affirmed by the Supreme Court of the Third Judicial
Department in the State, and then taken on a writ of error to the
Court of Appeals, and on the argument of the case before that
Court the first objection made to it by the counsel for the plaintiff
in error, Haggerty, was that the Court of sessions had no jurisdic-
tion over him under the statute of that State (2 Rev. St., 685, §
20,) and the second objection was that it had no power to order
enforcement of the sentence after an escape and expiration of the
term. The contrary was contended for, and numerous authorities
were cited in support of it by the district attorney, the counsel on
the other side. RAPALLO, J., delivered the opinion of the Court,
in which all concurred, as follows: " The proceedings sought to be
reviewed in this case were not authorized by any statute of the

State, nor by any precedent to which we have been referred. The cases cited by the learned district attorney were all capital cases, where at the time of the recapture of the prisoner, the time appointed for the execution had passed, and a new award of execution must be made by the Court to render the originat judgment effectual. *King v. Okey*, 1 Lev., 61; *Ratcliffe's Case*, 18 How. St. Tr., 430; *Bland v. State*, 2 Ind., 608. The mode of proceeding in cases where, for any reason, sentence of death is not executed at the time appointed, is now regulated in this State by statute (2 Rev. St., 659, §§23, 24; Laws 1860, c. 410, § 11; Laws 1861, c. 303; Laws 1862, c. 197, § 1;) and the old common-law proceeding does not exist even in capital cases, excepting so far as it conforms to the statute. In cases where, before the expiration of a term of imprisonment, the prisoner escapes, no new award of execution is necessary or proper. The prisoner can be retaken at any time, and confined, under the authority of the original judgment, until his term of imprisonment has been accomplished. The course of proceeding adopted in the present case may have been a judicious way of satisfying the officers of the identity of the party, but we think it was extrajudicial, and would not conclude the prisoner on *habeas corpus*. Neither is it reviewable on writ of error. The general term should have quashed the writ. The judgment of the general term should be reviewed, and judgment entered in the Supreme Court quashing the writ of error."

Much and undue stress, in the presentation and argument of the petitioner's claim to be discharged from his present imprisonment upon the writ of *habeas corpus* now before us, has been laid, I think, by the learned counsel for the prisoner, upon the humane maxims and fundamental precepts of the law which apply and are always recognized, and always should be, by courts of justice, at the proper time and stage in the prosecution of every criminal case before them, the chief of which is that every person brought to trial before such a tribunal must be presumed to be innocent of the offense charged against him until he is proved to be guilty of it;

and the second is that all penal statutes are to be construed strictly, and, if the court have any doubt as to the true intent of the legislature in enacting such a statute, the accused is entitled to the benefit of it. Like all other maxims and principles of the law, they have, when properly understood and applied, their just limitation in the great object which they are designed to secure,—the protection of the innocent while under criminal prosecution,—but not for his escape from lawful punishment and the sentence of the court after a trial and conviction had of the crime charged against him, without any ability whatever being left to him to deny or question the justice and legality of it then afterwards; for after a full and impartial trial and verdict and judgment are entered against him, and the time limited for a retrial of the case before the court on sufficient ground shown for it, the judgment, on a principle of law as fundamental and binding as any to be found in it, is final and conclusive, and imports absolute verity, and there is instantly an end of all presumptions which the law at any time before dictated in favor of the prisoner; and if the judgment stood, or could stand, in need of any presumption to sustain it, the legal rule of presumption would be immediately reviewed in favor of it, but it requires nothing to support it but the record of itself, and its own inherent, absolute, and unquestionable authority, which the law gives to its finality in the case.

And with all this array of law and legal regularity in the proceedings against the petitioner which resulted in his recapture and return to jail in this county, and to the alleged unlawful imprisonment of which he now complains in the writ before us, the only wrong or unlawful thing on which he can rely to establish his legal right to be discharged from it was his own unlawful act in breaking jail, and escaping from imprisonment, during the term fixed for it, and which he does not pretend to deny was wrongful and unlawful on his part; but because, as he alleges and the state denies, he was unlawfully recaptured and returned to imprisonment in said jail after the term of 10 years fixed, and the time specified in the

sentence for the termination of it had elapsed, by contending, as I have before observed, that the latter part of the sentence necessarily limited the 10 years of imprisonment fixed in the former part of it to the precise dates specified in the latter part for the commencement and ending of it, and both of which undoubtedly meant one and the same thing; that is to say, the same identical term or period of 10 years. And, such being the case, an escape within 10 years after the term of imprisonment commenced, was no less an unlawful violation of the latter than of the former part of the sentence, and it was therefore evidently a violation of both parts alike, and of course of the whole sentence for the term of imprisonment twice fixed in it, according to the intention and meaning of it, and of the statutes which prescribe it.

Although the common-law writ of *habeas corpus* is older than *magna charta*, the bed-rock of British freedom in after ages, it was made substantially all that it now is, as the great bulwark of every freeman in England against unlawful imprisonment is derived from that renowned section of it which, among other things, declares that " no freeman shall be taken or imprisoned unless by the legal judgment of his peers, or by the law of the land ;" and in such case, of course, he can have no legal right or claim to be discharged from the imprisonment. But it may well be said in this case that a greater than *magna charta* is here, that great constitutional guaranty against unlawful imprisonment in England, inasmuch as that cardinal and consecrated provision of it is substiantially incorporated in the constitution of the United States, and also in the constitution of every state in the Union. But, what is still more unfortunate for the right and claim set up by the petitioner in this case, it conclusively appears that his original imprisonment in this state was by the legal judgment of his peers and the law of the land ; that his recapture in the state of New York, after his unlawful escape from it, and his return to his present imprisonment in this State, is by virtue of the same, under the express authority of the constitution of the United States, and that it therefor conclu-

sively now appears to be, not only by the legal judgment of his peers, and by the law of this state, but also by the supreme law of the land in such a case, and is both right and lawful.

But if this exposition of the law of the case, which I think entirely covers it, were less satisfactory than it is to my mind, and it depended solely upon the question whether the petitioner could, in a court of law and justice, in a case like this, take advantage of his own wrong, and his further criminal offense against the laws of the State, of unlawfully escaping from his imprisonment, and unlawfully remaining at large, and until after the term of it had elapsed, on the ground of any novelty or peculiarity in the phraseology of the sentence, or of the statutory provisions which prescribe it, the meaning and intention of them being so perfectly clear and obvious, to completely elude and avoid the effect and operation of it ever afterwards, I must say that a legal proposition so palpably unreasonable and absurd as that could never receive the assent of my judgment; for I know of no principle of law or justice to warrant or tolerate it.   My opinion therefore is that the petitioner has no legal right whatever to be discharged under the writ of *habeas corpus* issued in this case, but should be remanded to the custody of the sheriff of this county, and confined, under the authority of this judgment against him as aforesaid, until his term of imprisonment has been accomplished.

WOOTTEN, J., concurred.

COMEGYS, C. J.   The English authorities cited by the state in the argument of the deputy attorney general, and all others that could have been cited by him from the same source, to legalize the rearrest of an escaped prisoner, are cases where the prisoner was in custody either upon a charge of felony or conviction of it.   There can be no contention against the right of rearrest where the escape is prior to a formal commitment, or while the prisoner is serving out a sentence.   Except, perhaps, in the case of a voluntary escape, —that is, by consent of the captor in the one case, or jailor in the

other,—rearrest is perfectly lawful. But can such rearrest be made for the purpose of carrying the sentence (in case of conviction) into effect when the time for the end of the sentence has passed? That is the question to be dealt with.

I have been at great pains to search the English treatises and reports upon the subject of rearrest of escaped criminals, but have not been able to find one case which in any way countenances the argument presented on behalf of the State; and yet it is impossible not to imagine that many cases similar to the present must have occurred in that kingdom. This is a very significant fact. If the courts there had ever had such a question as raised in this case before them, there would have been report of it somewhere. But there is none anywhere. It is true, there is plenty of authority from Lord Coke down, as there was in his day from the time of the earliest of his predecessors in legal bibliography, that one who escapes prison voluntarily may be rearrested at any time afterwards by his jailor or custodian, but every example given for the information of the reader is of imprisonment without definite, exactly ascertained *time* (not period) when it is absolutely to end. As I have said, the confinement was upon a charge in the one case, or conviction in the other, of a crime deemed felony. Of course, a rearrest in the former was lawful; otherwise there could be no bodily commitment to answer the charge; and in the latter, as felonies were most of them punishable with death, there was no *time* fixed when the imprisonment should cease. There could be no end of it except death. The final commitment in capital felonies was till sentence done upon the prisoner's body. There was no time appointed for execution of sentence of death until a very late period, the warrant of execution. designating no day for its performance, but simply ordering it to be done. The time was in the discretion of the officer, which he was to be careful to exercise at his peril. This was changed, however, by St. 25, Geo. II, c. 37, in cases of murder,—a crime at that time very common. To mark the general sense of the outrage to public justice by the fre-

quency of such crime, section 3 of that act was framed by parliament, which itself fixed the day of execution to be the next but one after sentence, unless that day happened on Sunday; if it did, then on the following Monday. Until the passage of that statute the time and place of execution were never part of the sentence. " The time and place of execution are never part of the sentence, except in case of murder, when they become so by the special provisions of the Legislature." 1 Chit. Crim. Law, 782. The section referred to is in these words: " That sentence shall be pronounced in open court immediately after the conviction of such murderer, and before the court shall proceed to any other business, unless the court shall see reasonable cause for postponing the same, in which sentence shall be expressed not only the usual judgment of death, but also the time appointed thereby for the execution thereof, and the usual marks of infamy hereby directed for such offender, in order to impress a just horror in the mind of the offender, and on the minds of such as shall be present, of the heinous crime of murder." It will thus be seen that all remarks of judges who have dealt with the question of recapture after expiration of the time of imprisonment fixed by the sentence are without any support of the authorities to which we habitually resort for law upon most subjects. And those in this country, cited in opposition to the petition, admit impliedly by their answer to the argument of *time fixed,* that such time is no part of the sentence or judgment; that, if it were such part, there would be no right of rearrest after the time expired. That appears to me to be the just inference from the language used. It is provided in the chapter of " Crimes and Misdemeanors " of our Code, that, " when imprisonment is part of the sentence, the term shall be fixed, and its commencement and ending specified." Page 795. This is but a pruning of the language of the Code of 1829, providing that, " whenever imprisonment shall be a part of the punishment, the court in the sentence shall specify the day on which the term shall commence, and also the day on which it shall expire." The meaning is the same precisely.

Now, I have shown that in England, since the statute of George above quoted, time is part of the sentence of murder; and yet the section of it imposing upon the court the duty of fixing if is of no greater significance or importance in respect of effect than our provisions quoted. It therefore would seem to be an unavoidable conclusion that by these provisions the time for the beginning and ending of a term of imprisonment is as much a part of the judgment or sentence as any other part of it; for instance, in this case, the lash, pillory, and imprisonment itself. Such being the case, how can an escaped convict be rearrested after expiration of the time fixed by the sentence for ending his imprisonment, and held till the years or months, as the case may be, assigned for his incarceration, have expired? I am unable to give any answer to this question in support of the State's contention. There is certainly no statute authorizing rearrest and imprisonment in such a case; and the sentence is, in the nature of such procedure, incapable of alteration. Its features are fixed, and no law can be passed which will change them, in the case of a person, against whose crime such sentence was pronounced. There can be no two opinions about this; nor about the suggestion made in the argument that the sentence might be considered as having an implied term coupled with it that the prisoner should not break jail. No sentence of a court in a criminal case has ever had imported into it by construction any sanction whatever. It is of the essence of a criminal sentence that it shall be without latent or patent ambiguity, and be not subject to any implication of meaning. The language of our criminal statute punishing offenses like that originally committed in this case is that the offender " shall be imprisoned for a term not exceeding ten years." The law requiring the beginning and end of the term to be fixed, the sentence is in this language, where it is for a year or more: " That you be imprisoned [or suffer imprisonment, as it is sometimes expressed] for the term of one year or ———— years, beginning with this day, and ending on ———— day of ————, A. D., ——, [the day preceding the anniversary of the sentence.]"

Then follows, at the end of the specific punishment, the commitment to the custody of the sheriff, which completes the sentence. How can the statutory penalty of imprisonment for a fixed term, beginning, by its language, on one day, and ending on another day, and which is embodied in the judgment pronounced by the court, be altered by a sheriff, and made to expand so as to include enough more time to make up for that when the convict was out of jail, and not undergoing imprisonment? A judgment of a court in a criminal case cannot be altered, even by it, after the final adjournment of the term when it was given; much less can it be taken up and a meaning given to it, which the rigid simplicity of its language forbids. There is no warrant for doing such violence. In none of the cases presented by the State was the sentence, like that in this case, to begin on a certain day, and end on a certain other day; but that the convict be imprisoned for a certain number of months or years commencing at a definite time. In such cases there is no difficulty, because the imprisonment is for a space of time generally, the ultimate limit of which is not determined by its commencement. Therefore it was properly held that until the imprisonment feature of the sentence had been satisfied by actual incarceration, it continued for that purpose. But in this State, by the requirements of our statute, both the beginning and the end of the term shall be fixed, when imprisonment is part of the sentence. The construction to put upon that provision is the uniform practice of the court in passing sentence, the language of which sentence I have before given; and I have shown also that time, when required to be stated, is part of the sentence. I think it wiser to follow the English doctrine upon that subject, which I have given, than expressions from one or more of our State courts, which it appears to me the real question before them did not always call for.

There is another consideration which does not seem to have had the attention given to it that should have been. In England, from whence all our legal ideas upon the subject of escape come, the prisoner received the same punishment for escape as that to which

he was sentenced; or, if charged with crime, that awarded to the crime. That is perhaps the reason why nothing is said about the right of rearrest after expiration of the term, if it can be conceived that such right existed. The end of assuring punishment appropriate to the original offense could be secured by indictment and conviction of breaking jail. Such would have been the law of this State at this day but for the ancient provision of our criminal law (Rev. Code, 767, § 18) that certain offenses named, and all others indictable at common law, and not specially provided for by statute, should be misdemeanors and punishable by fine and imprisonment, or either, in the discretion of the court. If this clause were out of the way, the petitioner could, upon conviction of breaking jail, be sentenced precisely as he was before. Now, how does the fact that he cannot be, (though he may be fined as much as before, and given another 10 year's term in jail,) warrant this court in adding to his original sentence a provision that, if the prisoner escaped, he might be arrested again at any time? That is precisely what it would do, in effect, if it were to hold that imprisonment now, after the time of expiration of the sentence has so long passed, is valid.

It seems unnecessary to pursue this view of the subject any further than to remark that there is no hint, even, in any English law book, that an escaped prisoner can be arrested after his sentence of imprisonment has ended, where there was a fixed date for its termination expressed in that sentence. The beginning and end being in this case incorporated, by legal requirement, in the sentence, and this being part of it, the sentence was the same, in effect, precisely as if its language had been: "That you be imprisoned from this day until ———— day of ————, A. D. ————."

Looking at the matter as before presented, I might now, as I conceive, declare unhesitatingly that the petitioner ought to be discharged, but for one important point made by the State in the argument, which, in effect, is that to discharge him would be to give him the benefit of his own illegal conduct in breaking jail. This position rests upon one of the maxims of the law, *nullus commodum*

*capere de injuria sua propria,* the pointed English tran??? ??? of which is, no man shall take advantage of his own wr??? ??? high quality of maxims is well expressed by Plowden (v?? ???, p. 27) in the case of *Colthirst v. Bejushin:* "Further, ?? ??? ??? principal things from whence arguments may be drawn; ??? ??? to say, our maxims, and reason, which is the mother of all ??? B maxims are the foundations of the law, and the ??? ?? of reason, and therefore they ought not to be imp???? ??? ??? ??? o be admitted. These maxims may, by the help ?? ??? ??? ??? pared together, and set one against another, (although ?? ??? ??? vary,) where it may be distinguished by reason that a ??? ??? ??? to one maxim than another, or placed between two m?? ??? ??? theless, they ought never to be impeached or impugned, ??? ??? to be observed and held as firm principles and auth??? ??? ??? selves." It is in support of this maxim that the ?? ??? ??? in *Boynton's Case,* 3 Coke, 43, was adopted. Lord ??? ??? are: "*Secondly,* it was resolved that if one in execu?? ??? ??? his own wrong, and be retaken, he should never have ??? ??? *querela* to discharge himself of the imprisonment, because ??? ?? not take advantage of his own wrong." The case was ??? ?? *querela,* brought on the ground of an escape in law; the ??? ?? who had the complainant in custody on his way to Westm? ?? from the county of Suffolk having taken him (but at his own r?q?? ?) to Lambeth, in the county of Surrey, out of the way, and n?? ?? the way, to Westminster. Now, as a sheriff's writ does not run into a county of which he is not sheriff, it follows that a p? ?? ? under a *ca. sa.,* if taken by the sheriff into another county, is taken where that officer has no authority to hold him, and thus the latter consents in law to his escape, as much so if he had in fact opened jail doors to him, and he had gone away. Under such circumstances, he is liable to the plaintiff. In *Boynton's Case,* however, as before said, the prisoner went to Lambeth, in Surrey, at his request; the bailiff attending him, and afterwards delivering him according to the command of the writ. His complaint failed, not

because there had been no legal escape in taking the prisoner unnecessarily into another county as the bailiff proceeded to Westminster,—for there had been,—but because the maxim forbade relief to him as seeking advantage from his own wrongful act in inducing the officers to commit an escape.

In *Ridgeway's Case*; in the same part of the report, page 52, it is said by the first resolution : "Although the prisoner flyeth into other counties where the sheriff hath no power, and where it may be objected the sheriff cannot have the custody of him, yet, forasmuch as the escape was of his own wrong, (whereof he shall not take advantage,) the sheriff might in fresh suit take him in any other county, and he should be held in execution.    *    *    *    And although the defendant be taken on a *capias ad satisfaciendum* and escapes, yet, if the writ be never returned and filed, the plaintiff may have a new *capais ad satisfaciendum* against him, and take him again, and he shall not take advantage of his own wrong.    *    *    *    And where the prisoner escapes of his own wrong, and is retaken, he shall never have an *audita querela* against the sheriff."

In Cro. Eliz., at page 555, the maxim was applied against a complainant who had obtained the writ, and contended that, as his co-defendant had escaped from custody, he also was entitled to be discharged. The court denied him his contention, and said, *inter alia :* " If one be in execution, and escapes *de son tort demesne*, it hath been adjudged in an *audita querela* to be no cause of discharging himself. And it hath been also adjudged in this court, between Sympson and Boyton, that if he [the prisoner] escapes by the sheriff's permission, and be retaken, yet it is a good execution for the party, if he will; and it shall not conclude the party to enforce him to take his remedy against the sheriff. *A multo fortiori*, unless two be in execution, the escape of the one shall not give his companion an advantage, and make the plaintiff to lose his execution, and be put to his remedy against the sheriff, who peradventure is nothing worth. Wherefore it was adjudged for the defendant."

This case is one of the authorities cited by Coke in *Ridgeway's Case*.

Now, there is absolutely no authority to be found in conflict with the maxim ; but it is applied in every case where one seeks to avail himself at law of a benefit or advantage which his own wrongful or (as in a case like the present) illegal act has brought about. Whatever advantage may accrue to others from his conduct (as, for example, to the plaintiff where the sheriff is solvent, and the defendant not,) none can be had by him. It is perfectly evident in the case put by Coke, and Croke also, that but for the maxim the plaintiff would be thrown entirely upon the sheriff for escape ; but while he could bring his action and recover, yet he might treat the execution as good. A *capias ad satisfaciendum*, executed and returned and filed, is payment in law of the debt against the prisoner. The plaintiff's remedy, if he escape, is only by action against the sheriff, who is bound to keep him, and must answer for his escape, he having the power to take all necessary means to secure him in custody. This shows how rigid is the maxim. The plaintiff can have no claim on the body of the prisoner, and yet the latter is not entitled to the *audita querela* to get relief against the sheriff for holding him.

It is very certain that a statute is needed to make some other provision, in criminal cases at least, for the consequences of escape by a prisoner, than the common-law precepts of indictment.

In view of the unequivocal application of the maxim to this application, my opinion is that the relief prayed for in the petition must be denied, and the prisoner remanded to custody.